I would acknowledge that there could be a federal entity that would be able to do that. Yet that is not still a possibility. Our final case this morning is number 17-1391. I would like to take the issues in our brief slightly out of order and I hope intuitively it doesn't lead us astray. But I would like to start by discussing why the district court should, their decision on the ensnarement motion should be reversed. And that the jury verdict finding of willful infringement should be reinstated. And then I would like to tackle our arguments on literal infringement and prosecution history estoppel. As the district court's decision on ensnarement motion went, we disagree with a couple fundamental paths down this process. First and foremost, as your honors are aware, the starting process on an ensnarement motion is constructing a hypothetical claim. And a hypothetical claim that would be broad enough to encompass the accused product. Now in this case, the defendants, the appellees, argued that the doctrine of equivalent subject matter that separated the accused product from the 554 patent was the connection method. And their connection method in particular included two fasteners and a double-eared connection. So in construing a hypothetical claim that was broad enough to encompass this doctrine of equivalent subject matter, the district court looked at just that connection method. But the issue here is that the hypothetical claim, which is for most intents and purposes similar to the 554 patent, is a combination of elements. A lot of different elements that make up the accused product. And in this case, elevating the connection mechanism alone and to the disregard of all of the other elements improperly elevated one aspect of the hypothetical claim. Did you submit a proposed hypothetical claim to the district court? We did not submit a proposed hypothetical claim to the district court. But we argued the hypothetical claim that the defendants submitted to the court. And similar to the case... The burden of proof is on you to establish infringement. Don't you have the obligation to come up with a hypothetical claim? We have an obligation to come up with a hypothetical claim or to agree with the defendants as far as the hypothetical claim that the court considers. The burden of production, of proving a prima facie case that the hypothetical claim would not be patentable rested with the defendants. But, Your Honor... They had to bring in the prior art, which they did. And then the burden shifts to you to show that your theory does not ensnare the prior art. That's correct, Your Honor. So the ultimate burden of persuasion rested with Carr to show that the hypothetical claim did not ensnare the prior art. Therefore, the doctrine of equivalence should not be limited. Now, in this case, we submitted evidence. First and foremost, there was evidence that we submitted showing that the combination of elements was unique, was something that was not in the marketplace. And this was done by both the testimony of Mr. Carr to the trial and the testimony of Mr. Wendland. Now, the appellees cherry-picked testimony and said, well, all these individual elements, a steel channel, pilings, filling the dock segments with concrete, the double-ear connection, all these individual elements were in the art and, therefore, a combination would just be intuitive. And the evidence that they submitted to the district court was the dock manual, which is essentially an encyclopedia that shows different aspects of a dock that can... But you had no testimony that the combination would have been non-obvious, right? We did have testimony to the jury, Your Honor, both in the form of Mr. Carr and his expert, Mr. Wendland, that the combination of elements, which in this case was the 554 patent or the double-ear connection, would not have been obvious, would not have been unique. And that's why the 554 patent was granted. It's also why the hypothetical claim would not have been obvious because it includes... But there wasn't a hypothetical. You never presented a hypothetical claim. We presented the hypothetical claim after the jury verdict to the district court. So we argued the hypothetical claim to the court as a matter of law. But the evidence, the factual testimony that the court relied upon in coming to this decision came from the jury trial. And that included the testimony of Mr. Carr and Mr. Wendland that a combination of the elements was not obvious and was unique and was something that was new. We also brought forth evidence of... The district court here, you agree, was acting as a... essentially as the fact finder after the evidence was submitted as to the ensnarement issue. The district court was acting as a fact finder but using testimony and evidence that was submitted to the jury. Right. So even if you're right that you had Mr. Carr's testimony and Wendland's testimony, why did the district court have to decide it was persuasive compared to the encyclopedia teachings together with whatever else there may be? Well in this case, your honor, the district court when it's deciding the ensnarement motion is similar to the PTO. It has the same burden of establishing an analysis or a reason why the combination of elements would have been obvious. Why someone, a person of ordinary skill in the art, would have just known that all of these elements should be combined together. What's the burden there? The burden of proving whether or not the elements are obvious rested with the appellees. So they had to present... No, no. When you're trying to prove infringement, we're not dealing with invalidity here. When you're trying to prove infringement, the burden is on you. Once they bring in the prior art and say this is the prior art that would be ensnared. Your honor is correct as far as the burden of persuasion rests with us. But in this case, when we're dealing with the finding of obviousness, the party asserting infringement has to articulate some reason or methodology that would motivate a combination of the elements. And the district court sitting in this case deciding an ensnarement motion sits similar to a PTO examiner who when they find that the hypothetical claim is obvious must articulate the motivation or the reason why you would combine elements together. But what the district court said was that you hadn't shown that it was not obvious, right? The district court did say that, your honor, and that's why we're here on appeal. You had a burden to show that it was not obvious. We did have a burden to show it was not obvious and we met that by submitting the testimony of Mr. Carr and Mr. Wentland that the combination of elements was new and unique and was not obvious. We also submitted secondary considerations showing copying and showing knowledge by the appellees of Mr. Carr's patented design. And that this evidence was key evidence that the jury used for finding a willful infringement. It is also secondary considerations that the district court should have used in determining obviousness of the hypothetical claim. So it is evidence that can be used in both regards and it was not properly considered by the district court. So we did submit evidence and analysis to the court. The other aspect of our analysis before the district court is that the appellees presented three prior art patents. The Berquist patent, the Jennings patent, and the Gervasi patent. All those prior art references were also considered by the PTO in granting the 554 patent. None of those prior art references have the double-ear connection that was heralded by the appellees as the doctrine of equivalent subject matter. So it still would require some kind of articulation by both the appellees and then by the district court that would take all of these aspects of the accused product, which for the most part are the same as the patented design, and swap out the double-ear connection. Again, it comes back to why would someone of ordinary skill in the art make this combination? We also argued before the district court that the district court should have found literal infringement because of the way that the claims should have been construed to the district court in the motions for summary judgment. The 554 patent does not limit a side wall to terminate or end where the end wall in this case exists. And so what had happened in the accused product is that they took a weld plate and added that to the end of the side wall and thereby put an aperture in the weld plate which would attach dock segments. They had a different aperture that attached the dock segments to a piling. We argued that literal infringement could have been found in this case if the court would have construed the claims so that splitting an element into two different pieces does not avoid infringement. We also argued to the district court in summary judgment and argue on appeal that the defendants and the appellees improperly tried to read a limitation of just one aperture. One aperture in the product that has to go through both the cylindrical rim and the side wall at exactly the same time. That wasn't a necessary basis for the non-infringement summary judgment. That is, you clearly have a pretty good claim differentiation argument about single bolt. But the basis for the non-infringement or a sufficient basis for the non-infringement, assuming it's correct, is simply that there's not a hole in the side wall because the plate that attaches and chucks out from the corner of the box is under this patent different from the side wall. It's called something different. Your Honor is correct. I think the decision on summary judgment as far as literal infringement dealt with both. Primarily it was the side wall and the welded end plate and the court differentiated between the two and thereby found no literal infringement. But we also did argue the aperture and made the argument of claim differentiation. So you are correct. I see that I'm in my rebuttal time. I'm happy to address any other questions or I may. Okay. Why don't you save it. Thank you, Your Honor. Mr. Robineau. Thank you, Your Honor. May it please the court, counsel. Appellees submit that this is precisely the type of case that the ensnarement defense was designed to prevent, the type of infringement claim. In this case the accused product forgoes the use of one of the limitations of the claim and in this case like in the general American transportation case, it's the very limitation that provided the patentability of the claims and instead uses an alleged equivalent feature that was well known in the art both before filing of the application for the patent, at the time of the filing of the application and since. Can you address the following? One version of the argument I think we just heard on the ensnarement is that focusing on the burden of production, not the burden of persuasion, that you didn't put enough in and while you put in evidence that the prior art showed each of the elements of the hypothetical claim, everything plus the double-eared connection, you didn't, the argument goes, put in the kind of here's why somebody would have a motivation to put all these things together. Why is that argument wrong? We had a couple of arguments, Your Honor, and I think we did present more evidence than the burdens required. We had two arguments. We argued below that the doc manual itself, which the district court agreed disclosed every limitation, just didn't disclose them all in one embodiment. We argued that that should be anticipatory under the court's rules. District court rejected that and instead found that the hypothetical claims are obvious. And why did the district court reject that? Because although all the limitations were found, the district court agreed all the limitations were found somewhere in the doc manual, they weren't all in a single embodiment, which was true. And we argued that the reason that they weren't all in a single embodiment was just the way that the book was structured. It talked about types of docs, then it talked about fasteners, which is what the double-eared connection is. Okay, so on obviousness, what did you have that showed what kind of evidence, expert or otherwise, that said you would actually put these things together even though they're not shown as part of a single embodiment in the doc manual? So our fallback position on the doc manual was the doc manual itself teaches practitioners, people who use the doc manual, to put together the various parts that it discloses in the doc manual. So they say, here are the types of docs. We have a pull doc, we have a permanent doc. And then in a later chapter they say, here are the fasteners. And they say, when you're using this book, you can use a variety of these fasteners. You get to pick and choose which of the fasteners to use when you build your pull doc or when you build your permanent doc. And that alone, we said, was an actual express suggestion that you combine the limitations, not by naming the limitation and saying that the double-eared connection should be used with a particular doc, but by saying to the practitioner, you can pick and choose any of these solutions when you build your doc. And the district court did cite that as a motivation to combine. We argued alternative, and this is straight from KSR, that this is the type of case that obviousness is designed to handle. A case where all of the limitations are known in the art, where all of the limitations are used in the hypothetical claim in this case, in the manner that they are intended to be used and that they have been used historically. So they're not used in an unusual way. And they achieve predictable results. And that's the type of case that we did. When you say you argued, are you now talking about lawyer argument, or are you talking about some kind of evidence? It was the briefing before the court. So it was a lawyer analysis of the evidence, analysis of the doc manual. I like the word analysis better than argument. That's right. Certainly, nothing in the doc manual says expressly, this double-eared connection has always been used this way. And when you connect the doc segments using this double-eared connection, the predictable results will be X, Y, and Z. But if you read it in context, you can tell that the way that the hypothetical claim calls for the double-eared connection to be used is the same way that the doc manual describes it as being used in various docs at the time before the application was filed. I thought that our cases had suggested that the only obligation of the accused infringer was to bring in the prior art and to say, here it is, and then that it didn't have the burden further of establishing obviousness, that the burden was on the patentee to establish non-obviousness. I agree completely, Your Honor. And I think the district court also agreed with that when it said that the plaintiff had not met his burden of showing that the invention or that the hypothetical claim was non-obvious. The reason we went into such detail trying to show that every limitation was there and that there was a motivation combined was just to be on the safe side and make sure that the court was aware that the prior art that we had presented did render the hypothetical claims obvious. Anything further? I do have, Your Honor. So I just want to speak very briefly on the ensnarement offense. I've already covered a lot of it. The appellant impugns the district court's decision without actually addressing the district court's analysis. District court followed the process that this court has approved for a long time. It adopted a hypothetical claim, one that we proposed. There wasn't any objection below. There is an objection in the appellant's briefing at this level, but they don't propose any alternative hypothetical claim, nor do they explain how the alleged errors in the hypothetical claim affect the district court's analysis. The district court then conducted a limitation by limitation analysis. It didn't just discuss the double-eared connection. It discussed every limitation and found every limitation present. There was no discussion by the appellant, no criticism of that analysis, no discussion of any single limitation that wasn't present in the prior art, as the district court found. And finally, the district court considered whether the person of ordinary skill of the art would be motivated combined, and I think I already addressed that. He relied on KSR and on the doc manual statements themselves that you can find the references. There was no analysis below or at this level by the appellant that criticized that analysis. The appellant didn't present any evidence or any argument that indicated that the elements from the prior art that meet the limitations of the hypothetical claim would not work for their intended purpose or that the prior art teaches away from the combination that we're discussing. And although Ms. Coley mentioned secondary considerations, there's no evidence below or on appeal regarding any secondary considerations. Alternatively, and it's in our paper, so I'll just address it very briefly, even if the ensnarement defense were not considered, the prosecution history estoppel should bar any doctrine of equivalence claim here. The first question in any prosecution history estoppel claim is whether there's a narrowing amendment, and I think there's no dispute here that the patentee narrowed the claims to include the very specific limitation that's at issue here, the connection mechanism. Then the question is whether the plaintiff can rebut the presumption that is created that the narrowing amendment, that the patentee gave up any equivalence. And in this case, there's simply nothing in the file history itself that indicates any reason, tangential or otherwise, for the amendment. All we know is that the amendment narrowed the very specific limitation that is at issue in the doctrine of equivalence. The district court disagreed with us, but that disagreement was based upon the district court's speculation about the reason for the amendment. There's nothing in the record itself, in the file history, that indicates a reason. And as this court said in the Honeywell case in 523F1304, silence does not overcome the presumption. And finally, I'll just address briefly, because I think the court addressed it in Ms. Coley's argument, the literal infringement argument. The court granted summary judgment of no literal infringement. There were two bases that the court granted it on. First, that the aperture that was in the extension, the welded-on extension of the double-ear connection, is not the sidewall. And that's supported. The court said it wasn't the sidewall because the patent itself addresses this type of an extension and calls it not the sidewall, but calls it an overlapping member. The claims themselves support this when they say that the sidewalls and the endwalls form a cavity. Anything outside of that cavity would not be a part of the sidewall. The second basis for the court's determination that there was no literal infringement is independent, and that's even if the double-ear connection is considered part of the sidewall, the aperture in the double-ear connection is not in the portion of the sidewall that's adjacent to the cylindrical rim, which is an independent basis for no literal infringement. The panel doesn't have any other questions, so I won't go further. Thank you, Mr. Romero. Ms. Coley? Yes, Your Honors. On rebuttal, I would simply note that we did submit evidence to the district court, which came in through the jury trial. So, again, invalidity was not an issue to the jury trial. We had infringement. And as part of that process, testimony came before the jury on a combination of elements. They didn't hear testimony about obviousness, right? They heard testimony about how the combination of these elements was new and unique. So both Mr. Carr and his expert, Mr. Wendland, testified that it was the combination of elements that was new and that was different, and that it had not been seen before. Not addressed to the doctrine of equivalence, though, right? I'm sorry, Your Honor. Not addressed to the combination in the hypothetical claim, right? There was testimony about whether the double-ear connection, whether the accused product had been seen anywhere in the market. And the only doc that includes all of these elements is either the 554 patent built by Mr. Carr or the accused product built by Mr. Cole. There was testimony about other docs that had been built by other builders in Door County, and that the combination of all of these elements is only present in these two docs, and that this combination is what led to the issuance of the patent. Did the parties agree that the evidentiary record for the forthcoming ensnarement decision by the district judge would be limited to what was presented at trial? No, Your Honor. There was no agreement on that front. Did you ask the district court for an opportunity to submit additional evidence specifically focused on the obviousness question? Well, Your Honor, yes. That came up outside the presence of the jury that ensnarement was a legal question, and so the judge allowed for briefing or submission of evidence after the verdict. Did you submit any additional evidence? We did, Your Honor. We submitted evidence in the form of the trial testimony, which was included in... No, no, no. Forget about the trial testimony. I think the question is, did you submit anything other than the trial testimony? No, Your Honor. We submitted the trial testimony and then analysis of the prior art patents that had been submitted by the defendants. Lawyer analysis. Excuse me? Lawyer analysis. Lawyer analysis, yes, Your Honor. On the flip side, the defendants, the appellees, did not submit any other evidence to show that a combination would have been motivated by a person of ordinary skill in the art. So they did not submit a declaration of Mr. Cole explaining why he combined these elements together. They did not submit the declaration of any other expert, nor did they counteract the uncontradicted testimony of Mr. Carr and Mr. Wendland that it was this combination that led to patentability, not just the connection method. And that goes to the point on prosecution history estoppel. The defendants and the appellees argue that prosecution history estoppel narrowed the claims of the patent. Untrue. What happened is that the original claims of the patent were claim number one and claim two, which was a dependent claim on claim one. Now the two aspects of claim two were... You can't tell from the prosecution history why the claim was narrowed, can you? It's our position. I don't know that the claim was narrowed. Because if you look at dependent claim two, you would naturally... Your position is the claim wasn't narrowed by the addition of this limitation from the dependent claims? I'm sorry, Your Honor. I meant to suggest that the claim two naturally included all of the aspects of claim one. So when the patent examiner allowed... You narrowed the claim, right? Well, claim two always included all of the aspects of claim one. It was a dependent claim. So when the patent examiner allowed what became claim one, it essentially combined together claim one and claim two. Okay, that's a narrowing amendment. We've held that specifically in the Honeywell case. In this case, Your Honor, though, if we look at the aspect of whether claim two, which became ultimately a combination of claim one, it includes all of the same elements. It includes the aperture in both... But you can't tell why the narrowing amendment was made, right? There is no evidence in the record to show why... Well, other than the fact that at the time the amendment was made, the examiner was looking at the issue of obviousness or anticipation from the prior art references. So at that time, it included Berquist, Jennings, and Gervais, which did not include a connection method in the 554 patent. So the patent owner amended the claims and included claim two and claim one together. So that's why it was narrowed. Okay, I think we're out of time. Thank you, Ms. Kelly. Thank you, Mr. Robinow. The case is submitted, and that concludes our session for this morning.